UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
UNITED STATES OF AMERICA

               -against-                             MEMORANDUM OF LAW
                                                      IN SUPPORT OF
ANGELA HUANG, et al.                         DEFENDANT'S MOTION
                                                      TO SUPPRESS
               Defendants.                            06 CR 1006 (KMK)
------------------------------------------------X

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of defendant Fuyin Huang's motion to suppress physical evidence consisting of a knapsack containing various items of personal property and U.S. currency which were seized on July 26, 2006 from the first floor of the A&B Trading Co., located at 146 West 29th Street, New York, NY. ("the premises"), and to suppress post-arrest statements.

## STATEMENT OF FACTS

On July 26, 2006 the defendant was employed as a salesperson at the premises selling to the public designer-type merchandise such as handbags which the government claims are counterfeit. As a salesperson, the defendant worked on the first floor. On that day, federal agents arrested the defendant and two others at that location and charged them with trafficking in counterfeit goods and services, in violation of 18 U.S.C.§2320.

During the course of the arrests, Bouhari Adoyi, a co-defendant also charged in the instant indictment, purportedly consented to a search of the first floor of the premises.[1] The defendant did not consent to a search of the premises.

The agents seized from the first floor a closed knapsack which belonged to the defendant. They searched the knapsack and seized its contents, which included a striped purse containing U.S. currency, business cards, a telephone book and the defendant's driver's license which has his photograph on the face of it.

---
[1] A search warrant was obtained for the second floor.

On May 21 and June 5 and 20, 2007, the Court conducted a suppression hearing.[2]

S/A Sarah Cantwil testified that on July 26, 2006, after an undercover officer arranged to purchase merchandise at A&B Trading and left a thousand dollars as a deposit, agents entered the premises and arrested 3 individuals, including Fuyin Huang. (T.29-30). A security sweep was conducted "to make sure there are know (sic) other individuals possibly hiding anywhere or any weapons, because there's a desk area, there's boxes. Just make sure there's no danger to ourselves or others." (T.30).

After Miranda warnings were administered to Bouhari Adoyi, he agreed to a search of the storefront and the back room. (T.35). His consent was sought because he was believed to be "one of the managers or supervisors" (T.36), since every time an undercover purchase was made, "he was always involved. You know, he handled the money, he handled the merchandise. He knew where it was." (T.36).

During the course of the search, Mr. Huang's backpack (Ex.B) was found by NYPD Detective Dino Polichetti. Inside the backpack was a "generic" pink purse. Its contents were inventoried and included the thousand dollars of buy money, a green address book, business cards and Mr. Huang's driver's license. (T.41-47, 122, Ex.2-8, 10). The backpack was not the type of designer merchandise which was the subject of the investigation. (T.120).

The driver's license contained Mr. Huang's photograph. He is a light-skinned Chinese male. Mr. Adoyi is a very dark-skinned black male. (T.118).

When Det. Polichetti found Mr. Huang's backpack, it was zipped closed. (T.132). He held it up in the air and, in English, asked "the individuals who were in custody" whose backpack it is. No one answered. He then unzipped the backpack, removed the pink purse, unzipped the purse and found U.S. currency and the defendant's driver's license. (T.133-35). Mr. Huang was handcuffed at

---

[2] References beginning with "T" are to the transcript of the suppression hearing on May 21, 2007.

this time. (T.116). There was no testimony that Mr. Huang was administered his <u>Miranda</u> warnings at that time.

The parties stipulated that when Mr. Huang was subsequently questioned, the assistance of an interpreter was used, and that when his counsel communicated with him, he did so with the assistance of an interpreter.[3] The Court should also note that the assistance of an interpreter was used during proceedings.

S/A Cantwil also testified that before the date of the arrest, "we did not know who [Fuyin Huang] was. And going back and reviewing the video, we did see on video that he had been in the store on other occasions, but it had not come to our attention, his role in the investigation, until the arrest, or the day of the arrest." (T.28-9). S/A Cantwil testified that prior to July 26, 2006 Mr. Huang was present. ("He was there."). (T.113-14). The video of July 26 (Ex.11) depicts Mr. Huang as being present. The transcripts of July 26 (Ex.12 and 13) reflect Mr. Huang's participation in a discussion with an undercover officer concerning arrangements to pick up a purchase of merchandise and to pay a deposit of $1,000.00. (Ex.12, at 12, 14-15, and Ex.13, at 3-4).

## ARGUMENT

A. The third-party consent is invalid as to defendant's knapsack.

For the reasons stated in Mr. Huang's memorandum in support of his motion to suppress, dated February 16, 2007, Mr. Adoyi's purported third-party consent to search the first floor is invalid as to the search and seizure of the defendant's knapsack because the agents could not reasonably rely on Mr. Adoyi's consent to search.

B. By remaining silent in response to an inquiry in English as to whose bag was seized, the defendant did not abandon his knapsack.

"When a person voluntarily abandons property, however, he forfeits any reasonable expectation of privacy that he might have had in the property.

---

[3] Hearing transcript of June 5, 2007, at 100-01.

3

(citations omitted). The fourth amendment's protections therefore do not extend to abandoned property. (citations omitted).

"In determining whether there has been an abandonment, the district court must focus on the intent of the person who is purported to have abandoned the property. (citations omitted). '[I]ntent may be inferred from words spoken, acts done and other objective facts.' " (citations omitted). United States v. Lee, 916 F.2d 814, 818 (2d Cir. 1990).

Based upon the stipulations entered into concerning the defendant's inability to speak English and the necessity for an interpreter during all court proceedings, there is no evidence that he understood the question posed by Det. Polichetti, in English, even if repeated, as S/A Randall Flint testified.[4] One cannot conclude that Mr. Huang intended to abandon his knapsack if he did not understand the question being posed concerning ownership of it.

However, even if the Court concludes that he did understand the question, silence is an equivocal reaction and does not demonstrate the unequivocal disclaimer of ownership that is required to establish an abandonment. "In most circumstances, silence is so ambiguous that it is of little probative force." United States v. Hale, 422 U.S. 171, 176, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). E.g., in United States v. Lee, supra, 916 F.2d at 818, the Court emphasized that on three separate occasions Lee "explicitly" stated that he was traveling without luggage; United States v. Springer, 946 F.2d 1012, 1017 (2d Cir. 1991) ("the uncontested testimony at the suppression hearing was that Springer consistently disclaimed ownership of the suitcase from the time that he initially declared that it was not his bag."); United States v. Moskowitz, 883 F.2d 1142, 1147 (2d Cir. 1989) (defendant twice "explicitly" denied that he had checked luggage); and United States v. Welbeck, 145 F.3d 493, 495 (2d Cir. 1998) (defendant said "no" three times when asked if he was carrying any bags).

In addition, the defendant's custodial status renders his silence all the more lacking in probative value.

---

[4] Transcript of June 5, at pp. 78, 90-91.

> At the time of the arrest and during custodial interrogation, innocent and guilty alike – perhaps particularly the innocent – may find the situation so intimidating that they may choose to stand mute. A variety of reasons may influence that decision. In these emotional and confusing circumstances, a suspect may not have heard or fully understood the question, or may have felt there was no need to reply (citation omitted). He may have maintained silence out of fear or unwillingness to incriminate another. Or the arrestee may simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention.

United States v. Hale, supra, 422 U.S. at 178.

Finally, even if the Court determines that the defendant understood the question and that his silence is an unequivocal response, nevertheless it would be a violation of the Fifth Amendment to find, based upon his constitutionally protected silence, that his knapsack was lawfully seized and searched. Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) prohibits the penalizing of the constitutionally-protected right to remain silent by commenting on the defendant's exercise of it ("[C]omment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' which the Fifth Amendment outlaws." (citation omitted); Miranda v. Arizona, 384 U.S. 436, 468, n.37, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966) ("The prosecution may not, therefore, use at trial the fact that [the defendant] stood mute or claimed his privilege in the face of accusation.").

Although there is no evidence that he was advised of his constitutional rights at that time, including his right to remain silent, as required by Miranda v. Arizona, Mr. Huang was clearly in custody. In United States v. Moscowitz, supra, 883 F.2d at 1148, the Court addressed the converse of defendant's circumstances in disagreeing with the suggestion that because Moskowitz was entitled to remain silent when he was in custody, his failure to acknowledge ownership of his luggage did not constitute abandonment:

> Moskowitz's argument incorrectly suggests that the finding of abandonment was in some way based on his refusal to respond to Agent Rembijas' questioning at the Port Authority Police office. The district court in no way relied on Moskowitz's constitutionally

protected silence in the face of questioning as the basis for its finding that Moskowitz intended to abandon his luggage. Moskowitz did not abandon his bags by remaining silent in the face of interrogation about the bags. Rather, he abandoned his bags earlier when, after having been advised of his right to remain silent and having elected to do so, he twice stated as he left the plane that he had no checked luggage.

The fact that the defendant may not have been Mirandized at that time does not allow the government to affirmatively use the defendant's silence as substantive evidence. " 'The warnings mandated by [Miranda] are a prophylactic means of safeguarding Fifth Amendment rights', Doyle v. Ohio, 426 U.S. 611, 617, 96 S.Ct. 2440, 49 L.Ed. 2d 91 (1976) – they are not the genesis of those rights. Therefore, once the government places an individual in custody, that individual has a right to remain silent in the face of government questioning, regardless of whether the Miranda warnings are given." United States v. Velarde-Gomez, 269 F.3d 1023, 1029 (9th Cir. 2001) (government was prohibited from eliciting testimony that before the defendant was read his Miranda rights, he did not respond to a Customs Agents' informing him that drugs had been discovered in his car). See also, United States v. Hernandez, 948 F.2d 316, 321-23 (7th Cir. 1991) (error to allow testimony that defendant did not respond after being informed that he was under arrest for a narcotics violation). The use of silence for purposes of impeachment when the interest in a trial as a reliable means of determining the truth may be at stake is distinct from allowing silence as substantive evidence. See Fletcher v. Weir, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (in the absence of Miranda warnings cross-examination as to post-arrest silence is permitted); Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed. 2d 86 (1980), permitting pre-arrest silence to impeach the defendant on cross-examination ("impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial.").

The prohibition against affirmatively using post-arrest silence in the absence of Miranda warnings was addressed in United States v. Moore, 104 F.3d

377, 385 (D.C. Cir. 1997), stating that

> custody and not interrogation is the triggering mechanism for the right of pretrial silence under Miranda. Any other holding would create an incentive for arrest officers to delay interrogation in order to create an intervening silence that could then be used against the defendant.

In other contexts the penalizing of the Fifth Amendment right to silence has been questioned. In Kolender v. Lawson, 461 U.S. 352, 359, n.9, 103 S.Ct. 1855, 75 L.Ed. 2d 903 (1983), the Court, in striking down a California loitering statute which required persons who loiter or wander on the streets to provide a "credible and reliable" identification and to account for their presence when requested by a police officer, noted that , "[t]o the extent that §647(e) criminalizes a suspect's failure to answer such questions put to him by police officers, Fifth Amendment concerns are implicated. It is a 'settled principle that while police have the right to request citizens to answer voluntary questions concerning unsolved crimes they have no right to compel them to answer,' " citing Davis v. Mississippi, 394 U.S. 721, 727, n.6, 89 S.Ct. 1394, 22 L.Ed. 2d 676 (1969).[5] Justice Brennan in his concurring opinion in Kolender v. Lawson, 461 U.S. at 306-7, stated that "California cannot abridge this constitutional rule by making it a crime to refuse to answer police questions during a Terry encounter, any more than it could abridge the protection of the Fifth and Sixth Amendments by making it a crime to refuse to answer police questions once a suspect has been taken into custody." See also, People v. Bright, 71 N.Y.2d 376, 385 (1988), holding unconstitutionally vague a loitering statute which required that a person loitering or remaining in a transportation facility give a "satisfactory explanation of his presence." The Court held that the statute also violated the Fifth Amendment as

---

[5] However, since the Court decided that the statute was unconstitutionally vague, it declined to decide the question as to "whether the requirement that an individual identify himself during a Terry stop violates the Fifth Amendment protection against compelled testimony... ." 461 U.S. at 361, n.10. Similarly, in Brown v. Texas, 443 U.S. 47, 53, n.3, 99 S.Ct. 2637, 61 L.Ed. 2d 357 (1979), the Court declined to decide "whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements."

"violative of a citizen's right to not to answer questions posed by law enforcement officers."

Accordingly, the Court cannot find an abandonment based upon Mr. Huang's silence.


Dated: New York, NY　　　　　　　　　　Respectfully submitted,
      July 13, 2007


                                                /s/ Joel M. Stein
                                                Joel M. Stein, Esq. #2385
                                                Counsel to defendant
                                                Fuyin Huang
                                                3 New York Plaza – 10th fl.
                                                New York, NY 10004
                                                (212) 344-8008