**U.S. Department of Justice**



*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 8, 2007

By Hand & Electronic Filing

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street, Room 533
White Plains, New York 10601

### Re: **United States v. Angela Huang, et al.**
### **06 Cr. 1006 (KMK)**

Dear Judge Karas:

The Government respectfully submits this letter to
respond to some of the issues raised at the Oral Argument on
October 30, 2007, and to request a ruling clarifying the scope of
the hearing that the Government understands that defendant
Bouhari Adoyi ("Adoyi") is seeking relating to Special Agent
Sarah Cantwil's affidavit (the "search warrant affidavit") in
support of a search warrant of the second floor room (the "second
floor room") of the India Building, the building next door to A&B
Trading. (A copy of the search warrant and search warrant
affidavit is attached as "Exhibit A").

Adoyi has argued that Agent Cantwil's affidavit is
misleading, and as a result, the fruits of the search of the
second floor room must be dismissed, or in the alternative, a
hearing should be granted under Franks v. Delaware, 438 U.S. 154,
164-65 (1978). Specifically, Adoyi claims, without any
evidentiary support whatsoever, that law enforcement agents
secretly entered the second floor room and used observations
gleaned from that entry as part of the basis for the search
warrant application. Based upon this speculation, Adoyi seeks to
re-open the hearing for additional testimony concerning the
search warrant application. This application is factually
unsupported and is legally incorrect. Accordingly, both the
motion to suppress the fruits of the search and the motion for a
Franks hearing should be denied.

**DISCUSSION**

## I.   Defendant's Motion to Suppress and for a Franks Hearing Should Be Denied

As the Court is aware from the prior days of testimony, on July 26, 2006, agents of the United States Secret Service ("Secret Service") made an undercover purchase of counterfeit handbags at A&B Trading from Adoyi and his co-defendant Fuyin Huang, and then arrested both Adoyi and Huang.  While the agents were present at A&B Trading, Adoyi consented to a search of the first floor office and a back room at A&B Trading where he sold the bags.  In the course of that search, agents recovered various items, including, among other things, stamps that are placed into presses and are used to convert a generic handbag to one bearing a phony designer trademark. (May 21, 2007 Tr. 41).  The Government expects that, if called to testify at another hearing, Agent Cantwil would testify that she showed the stamps to Adoyi and confronted him with them.

While the search was ongoing, Adoyi was being monitored by Special Agent Todd Bratz, who got Adoyi water and food. (May 21, 2007 Tr. 41).  As Agent Bratz testified, during the time he was sitting with Adoyi, Adoyi asked what was going to happen to him. (June 5, 2007 Tr. 7, 8-9)  Then Agent Bratz told him that Adoyi had sold counterfeit bags to an undercover agent and had been seen going to the next door location to fill the orders. (June 5, 2007 Tr. 9).  Agent Bratz testified as follows:

Q.   When did you leave A&B Trading?

A.   We departed this area of A&B Trading after Mr. Adoyi, that conversation we spoke of earlier, he asked me what was going to happen, what was going on, and I told him, you know, we were there conducting arrest warrants that he had already been advised of, and that we were conducting a search of the premises for these fake counterfeit handbags, and I told him at that point that we know that he was involved in it because we had an undercover that went in and made an order, and Mr. Adoyi was seen by agents of the Service exiting A&B Trading, going next door, going up an elevator, coming back down with these handbags that were then provided to our undercover.

So when I told Mr. Adoyi that, he, at that point, after I said, you know, can you help us out with this, we

-2-

know you know where it is, and he said yeah, he did
know where it was, and it was upstairs.

Q.    And after he told you this, what did you do?

A.    At that point, we took him, unrestrained him from the
chair he was on, handcuffed him behind his back because
we had to physically exit the store, go on the public
street, on the sidewalk, excuse me, not the street, the
sidewalk, and go directly next door to where the
elevator was at the time.  Upon going to the elevator,
we had, I was told previously by, I think, Special
Agent Cantwil that it was believed that these
counterfeit handbags were actually on the fourth floor.
But when we got on the elevator, Mr. Adoyi advised us
that we're going to the second floor, which we did.

Q.    Once you got to the second floor, what happened?

A.    When we got off the elevator on the second floor, Mr.
Adoyi exited and walked to the left.  I don't remember
if it was the first door on the left or second door on
the left, but Mr. Adoyi walked out and stood in front
of one of the doors immediately on the left, and
because he was restrained behind his back, he couldn't
point specifically to which door it was; he indicated
to me by a head nod at the door in front of him that
that's what, that's where the bags were being held.
And I asked him, is that the door, and at that point,
he gave me an affirmative response, yes, that's where
it was.

At that point, I took Mr. Adoyi back down, and we went
back to this area, because at that time, that door was
staffed by a Secret Service agent, to ensure nobody
came in or out of while a search warrant was applied
for with your office.

(June 5, 2007 Tr. 8-10).

        Accordingly, based upon the investigation, including
the undercover purchases, the items already located in A&B
Trading, and Adoyi's statements, the search warrant application
sought permission to search the second floor room for counterfeit
handbags, presses used to manufacture such bags, stamps used to
create counterfeit labels, proceeds of counterfeiting activity,
and documents evidencing countering activity. (Exhibit A,

-3-

Schedule A). In support of that application, paragraphs 16 and 17
of the search warrant affidavit provide:

> "16. Approximately one hour later, Agent-1 returned to
> A&B Trading, and was informed that there [were]
> two boxes of handbags at A&B Trading and the
> remainder of Agent-1's order of handbags was 'next
> door.'  At this time, MOHAMMED ADOYI was arrested
> at A&B Trading by USSS agents and read his Miranda
> rights.  MOHAMMED ADOYI waived his Miranda rights
> and stated in sum, substance, and in part that
> there was a room on the second floor in the
> building next door where counterfeit bags and
> presses used to manufacture counterfeit bags were
> stored.
>
> 17. MOHAMMED ADOYI then accompanied USSS agents to the
> building next door that was marked as the '146
> India Building' at 146 West 29th Street, New York,
> New York (the "India Building").  He took the
> elevator up to the Second Floor of the India
> Building.  When he exited the elevator, he
> indicated that the first door on the left,
> directly across the hall from the stairwell, was
> the room where A&B Trading stored counterfeit
> handbags and presses used to manufacture
> counterfeit handbags."

The Supreme Court has held that warrant affidavits are
entitled to "a presumption of validity," Franks, 438 U.S. at 171,
and should not be parsed in a "hypertechnical manner," United
States v. Ventresca, 380 U.S. 102, 109 (1965).  Thus, even an
untrue statement within the affidavit will not necessarily
undermine probable cause.  See United States v. Martin, 157 F.3d
46, 52 (2d Cir. 1998).  All that is required is that the
statements in the affidavit be "believed or appropriately
accepted by the affiant as true."  Franks, 438 U.S. at 165.

In Franks, the Supreme Court held that a defendant is
entitled to an evidentiary hearing only if he can make a
substantial preliminary showing that (1) the warrant affidavit
contains a false statement, (2) the false statement was included
intentionally or recklessly, and (3) the false statement was
integral to the probable cause finding.  See id. at 155-56.

In order to determine whether the allegedly false
information was integral to a probable cause determination, the
court must decide whether, after removing the supposedly false

statements, the corrected affidavit still makes out probable cause. United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998); United States v. Martin, 426 F.3d 68, 75-76 (2d Cir. 2005) (finding corrected affidavit still supported probable cause); see United States v. Canfield, 212 F.3d 713, 720-21 (2d Cir. 2000) (reversing suppression of evidence where the district court erred as a matter of law in finding insufficient corroboration of informant's undisputed statements); see also United States v. Trzaska, 111 F.3d 1019, 1026 (2d Cir. 1997)(warrant affidavit "excised of the tainted evidence," established probable cause); United States v. Awadallah, 349 F.3d 42, 69-70 (2d Cir. 2003)(finding material witness warrant valid after excising misleading statements).

Under this standard, Adoyi's allegations do not warrant a hearing. Adoyi claims that the search warrant is misleading because he maintains that the agents could only have known that "presses" were stored in the second floor room, as set forth in paragraphs 16 and 17 of the search warrant affidavit, if they had conducted a surreptitious search of that room before obtaining a search warrant. In making this argument, Adoyi relies upon the fact that Agent Bratz did not explicitly testify that Adoyi said that "presses" were in the room.[1]  Following the speculative trail, Adoyi contends that the agents put that observation into the affidavit based on an illegal search.

But the Court need not address this issue, because even if the phrase "presses used to manufacture counterfeit bags" is stricken from the search warrant affidavit, there is more than enough factual support for a search warrant authorizing a search of the second floor room. As the Court is aware, this case followed a series of undercover purchases of counterfeit bags from Adoyi. (Exhibit A at ¶¶ 7-16).  In at least one instance,

---

[1]     At the hearing, the Court raised a question about the fact that the redacted investigative summary that was produced as 3500 material on May 21, 2007 does not mention any statement by Adoyi that "presses" were stored in the room.  The Government has spoken to Agent Randall Flint, who wrote the summary.  Agent Flint indicated that the section of the investigative summary pertaining to the statement and the search by Adoyi were written weeks after the arrest of Adoyi and the search of the second floor room and that the summary was based upon both documents, such as the search warrant affidavit itself and Adoyi's written post-arrest statement made later that evening, and conversations with other agents.

the undercover agent asked for fake bags and agents conducting
surveillance saw Adoyi enter the door of the "India Building" and
return with the counterfeit bags. (Exhibit A at ¶¶ 10-12).
Agents spoke to the owner of the India Building, who confirmed
that the second floor room that Adoyi pointed out was being
leased by A&B Trading. (Exhibit A at ¶18).

        Moreover, Adoyi does not challenge the testimony that
he told the agents that bags were in the room.  In fact, Adoyi
testified as follows on direct examination:

    Q.  Did they ask you anything about where the bags were
        kept?

    A.  Yes.

    Q.  Did you tell them where the bags were kept?

    A.  Yes.

    Q.  Did they ask you about a room on the second floor where
        bags were kept?

    A.  Yes, [sir].

    Q.  And did they take you up to that second floor at any
        time?

    A.  Yes, they took me there.

    Q.  Did they ask you to show them which door was the
        storage room?

    A.  Yes, they asked me.

    Q.  And did you show them?

    A.  Yes.

(June 20, 2007 Tr. 34).  Thus, it is clear that probable cause is
established by the information provided in the search warrant
affidavit even if the challenged statements from paragraphs 16
and 17 are excised.  Since the corrected affidavit still makes
out probable cause for the search of the second floor room, Adoyi
cannot make the necessary preliminary showing that the alleged
false statement was integral to the probable cause finding.

Moreover, although Bratz's testimony is not clear on the issue, there is little doubt that the agents expected to find additional inventory of bags (whether generic or counterfeit), as well as equipment and other accouterments of the counterfeiting business, which includes presses. Indeed, in almost any counterfeiting case (whether involving counterfeit currency or handbags) agents would expect to find various devices used to create the illicit goods along with the finished products. This is especially true in this case, since Agent Cantwil saw the stamps that were recovered and confronted Adoyi with them. It follows that there is no basis for a finding that the statement is false or, more seriously, that the agents intentionally or recklessly included a false statement in the search warrant affidavit.

The second reason the argument fails is that it is simply illogical. Adoyi proffers no reason why the agents would enter the room if they knew that a warrant was being obtained. Nor was there any reason to do so to bolster the probable cause for the warrant. Agents had seen Adoyi retrieve counterfeit merchandise from next door, had identified the room, and had confirmed that it belonged to A&B Trading. Indeed, even without any statement by Adoyi, the warrant would have been issued.

The more logical inference from the evidence – including the fact that the Agent Cantwil and the other agents had experience investigating counterfeiting cases – would be that the agents expected, based upon the investigation and Adoyi's statements, that they would find both counterfeit bags and presses and stamps used to manufacture counterfeit bags in the room. For the foregoing reasons, Adoyi's motion for a Franks hearing should be denied.

## II. Since the Defendant is Not Entitled to an Evidentiary Hearing under Franks, Any Hearing Ordered by the Court Should Be Limited Only to Agent Cantwil's Credibility

Since Adoyi cannot make a substantial preliminary showing that the false statement was integral to the probable cause finding, the only purpose of the hearing ordered by the Court would be to examine Agent Cantwil's credibility as it related to the testimony she has already given. The Government therefore requests that any hearing set by the Court be limited to the testimony and credibility of Agent Cantwil, who was the agent who swore to the search warrant affidavit. Any other testimony would be collateral to the issues raised by Adoyi, and therefore should be limited by the Court.

-7-

The Government understands that, at any hearing, Agent Cantwil would testify that the information concerning Adoyi's statement about the second floor room "in the building next door" came from another agent who communicated that to Agent Cantwil by phone.  Agent Cantwil was either in transit or in the United States Attorney's Office when Adoyi was taken to the second floor room.  Agent Cantwil would testify that she did not have first-hand knowledge of anything that Adoyi said about the second floor room.

Additionally, due to the concern raised by Adoyi concerning a possible "surreptitious search" of the second floor room prior to the agents obtaining a search warrant, the Government has spoken to the only individuals who spoke to Agent Cantwil by phone on the day of the search of the second floor room, Special Agent Bratz and Supervisory Special Agent Pablo Martinez (who was in charge of the operation at A&B Trading), both of whom indicated to the Government that they did not enter the second floor room nor did they see anyone else enter the second floor room.

**CONCLUSION**

For the foregoing reasons, the defendant's motion to suppress the fruits of the search of the second floor of the India Building should be denied without a hearing.  In the event that a hearing is held, the Government requests that the hearing be limited to the credibility of Agent Cantwil.

Respectfully Submitted,

MICHAEL J. GARCIA
United States Attorney


By:    /s/ Steve C. Lee
       Steve C. Lee
       Assistant United States Attorney
       Telephone: (212) 637-2314

cc:  Stacey Van Malden, Esq.
     Attorney for Angela Huang

     David Patton, Esq.
     Attorney for Bouhari Adoyi

     Joel Stein, Esq.
     Attorney for Fuyin Huang

Exhibit A

AO
(Rev.
8/97)

## SEARCH WARRANT ON WRITTEN AFFIDAVIT

| United States District Court | DISTRICT<br><br>SOUTHERN DISTRICT OF NEW YORK | |
|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>THE PREMISES KNOWN AND DESCRIBED AS THE SECOND FLOOR ROOM AT THE "INDIA BUILDING" LOCATED AT 146 WEST 29th STREET, NEW YORK, NEW YORK, 10001, AND ANY CLOSED CONTAINERS AND ITEMS CONTAINED THEREIN. | DOCKET NO. | MAGISTRATE'S CASE NO. |
| | To: ANY AUTHORIZED FEDERAL AGENT | |

Affidavit(s) having been made before me by the below-named affiant that he has reason to believe that on the premises known and described as

THE PREMISES KNOWN AND DESCRIBED AS THE SECOND FLOOR ROOM AT THE "INDIA BUILDING" LOCATED AT 146 WEST 29th STREET, NEW YORK, NEW YORK, 10001, AND ANY CLOSED CONTAINERS AND ITEMS CONTAINED THEREIN.

in the Southern District of New York there is now being concealed property, namely

### SEE EXHIBIT A.

and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above-described and that the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s),

YOU ARE HEREBY COMMANDED to search on or before _____8/4/06_____ (not to exceed 10 days) the person or place named above for the property specified, serving this warrant and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) (At any time in the day or night)* and if the property be found there to seize it, leaving a copy of this warrant and receipt for the property taken, and prepare a written inventory of the property seized and promptly return this warrant to __Any U.S. Magistrate Judge__ as required by law.

| NAME OF AFFIANT<br><br>SA Sarah E. Cantwil, USSS | SIGNATURE OF JUDGE OR U.S. MAGISTRATE<br><br>*[signature]* | DATE/TIME ISSUED<br>7/26/06<br>9:15 pm |
|---|---|---|

* If a search is to be authorized "at any time in the day or night" pursuant to Federal Rules of Criminal Procedure Rule 41(c), show reasonable cause therefor.

19

## SCHEDULE A

The following items, which constitute evidence, instrumentalities, or fruits, of a scheme and conspiracy to traffic in counterfeit goods, in violation of Title 18, United States Code, Sections 371 and 2320 may be seized:

1. Counterfeit handbags, including but not limited to brands such as "Coach," "Burberry" and Christian Dior;

2. Presses used to manufacture counterfeit bags;

3. Stamps used to create counterfeit labels to be affixed in counterfeit handbags

4. Records and documents evidencing ownership, tenancy, and/or occupancy of THE SECOND FLOOR ROOM and also of A&G Trading, Inc.

5. Any cash, checks, money orders, or other negotiable financial instruments that may be proceeds of the fraud.

6. Any safety deposit boxes, safes, key-lock strong boxes, and other types of locked or closed containers that may contain any of the items listed in Schedule A, items 1-5.

20

A0.    AFFIDAVIT FOR SEARCH WARRANT
(Rev. 8/97)

| 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔆𝔬𝔲𝔯𝔱 | DISTRICT<br><br>**Southern District of New York** | |
|---|---|---|
| **UNITED STATES OF AMERICA**<br>**v.**<br>PREMISES KNOWN AND DESCRIBED AS<br><br>THE PREMISES KNOWN AND DESCRIBED AS THE SECOND FLOOR ROOM AT THE "INDIA BUILDING" LOCATED AT 146 WEST 29th STREET, NEW YORK, NEW YORK, 10001, AND ANY CLOSED CONTAINERS AND ITEMS CONTAINED THEREIN. | DOCKET NO. | MAGISTRATE'S CASE NO. |
| | To:<br><br>**United States Magistrate Judge** | |

The undersigned being duly sworn deposes and says: That he/she has reason to believe that

☐ on the person of    ☒ on the premises known    DISTRICT    **Southern District of New York**

**THE PREMISES KNOWN AND DESCRIBED AS**
THE PREMISES KNOWN AND DESCRIBED AS THE SECOND FLOOR ROOM AT THE "INDIA BUILDING" LOCATED AT 146 WEST 29th STREET, NEW YORK, NEW YORK, 10001, AND ANY CLOSED CONTAINERS AND ITEMS CONTAINED THEREIN.

The following property is concealed:

**SEE ATTACHED AFFIDAVIT**

Affiant alleges the following grounds for search and seizure[2]

**SEE ATTACHED AFFIDAVIT**

See attached affidavit which is incorporated as part of this affidavit for search warrant

Affiant states the following facts establishing the foregoing grounds for issuance of a Search Warrant

**SEE ATTACHED AFFIDAVIT**

| SIGNATURE OF AFFIANT<br><br>*[signature]* | OFFICIAL TITLE, IF ANY |
|---|---|

Sworn to before me, and subscribed in my presence:

| DATE<br>~~January 9, 2006~~  7/26/06 | JUDGE[1] OR FEDERAL MAGISTRATE JUDGE<br><br>*[signature]* |
|---|---|

[1] United States Judge or Judge of a State Court of Record.
[2] If a search is to be authorized "at any time in the day or night" pursuant to Federal Rules of Criminal Procedure 41(c), show reasonable cause therefor

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA            :

                                                        **AFFIDAVIT IN SUPPORT**
        - v. -                      :        **OF AN APPLICATION FOR**
                                                        **SEARCH WARRANT**

THE PREMISES KNOWN AND DESCRIBED    :
AS THE SECOND FLOOR ROOM AT THE
"INDIA BUILDING" LOCATED AT         :
146 WEST 29th STREET, NEW YORK,
NEW YORK, 10001, AND ANY CLOSED     :
CONTAINERS AND ITEMS CONTAINED
THEREIN.                            :
- - - - - - - - - - - - - - - - - - -X
STATE OF NEW YORK                   )
                                    )    ss.:
SOUTHERN DISTRICT OF NEW YORK       )

        SARAH E. CANTWIL, being duly sworn, deposes and says:

        1.   I am a Special Agent with the United States Secret
Service ("USSS"). I make this Affidavit pursuant to Rule 41 of
the Federal Rules of Criminal Procedure for the issuance of a
warrant to search THE PREMISES KNOWN AND DESCRIBED AS THE SECOND
FLOOR ROOM AT THE INDIA BUILDING, LOCATED AT 146 WEST 29TH
STREET, NEW YORK, NEW YORK, 10001 ("SECOND FLOOR ROOM"). I have
participated in numerous investigations of criminal activity,
including investigations on the trafficking of counterfeit goods.
During those investigations, I have executed or participated in
the execution of numerous search warrants and seized evidence of
these violations.

        2.   I have participated in the investigation of this
matter, and I am familiar with the information contained in this
affidavit based on my own personal participation in the

22

investigation, my review of documents and video, conversations I
have had with other law enforcement officers about this matter,
and my training and experience as a USSS agent.  Because this
affidavit is being submitted for the limited purpose of
establishing probable cause to search THE SECOND FLOOR ROOM
described below, I have not included the details of every aspect
of the investigation in this affidavit.  Except where otherwise
indicated, the actions, conversations, and statements of others
included within this affidavit are reported in substance and in
part.

     3.    As set forth more fully below, and in the
Complaint in <u>United States v. Angela Hung, Gen LNU, and Mohammed
LNU</u>, 06 Mag. 1060 (attached hereto as Exhibit A), there is
probable cause to believe that ANGELA HUNG, GEN LNU, and MOHAMMED
ADOYI, are engaged in a conspiracy to knowingly traffic
counterfeit handbags, in violation of Title 18, United States
Code, Sections 371 and 2320.  Moreover, I submit that there is
probable cause to believe that now located in THE SECOND FLOOR
ROOM are fruits, instrumentalities, and evidence of violations of
Title 18, United States Code, Section 371 (conspiracy to traffic
in counterfeit goods).  Such evidence consists of the items set
forth in Schedule A to the Search Warrant.  In addition, such
evidence may be stored in secure locations like safety deposit
boxes, safes, key-lock strong boxes, and other types of locked or

2

closed containers in an effort to prevent the discovery or theft of these items.

THE SECOND FLOOR ROOM

4.    THE SECOND FLOOR ROOM, which I respectfully submit there is probable cause to believe has evidence and instrumentalities of violations of federal law, is a room in the India Building, that is located at 146 West 29th Street, New York, New York.

5.    Based on my conducting visual surveillance of THE SECOND FLOOR ROOM and conversations with MOMHAMMED ADOYI, I know that the SECOND FLOOR ROOM is in the "India Building" located at 146 West 29th Street, adjacent to A&B Trading, Inc ("A&B Trading"). The building is a twelve story cinder block building with the main entrance in between a freight elevator another storefront, all facing 29th Street. The SECOND FLOOR ROOM is on the second floor of this building, with a metal door immediately to the left of exiting the elevator. The door to the SECOND FLOOR ROOM is also directly opposite the stairwell on the second floor.

<u>PROBABLE CAUSE THAT FRUITS, INSTRUMENTALITIES, AND EVIDENCE OF THE CRIME ARE LOCATED IN THE SECOND FLOOR ROOM</u>

6.    USSS has been investigating a conspiracy to traffic in counterfeit bags originating out of 146 West 29th Street, New York, New York. I have spoken with other law enforcement agents and representatives of United States Citizenship and Immigration

3

24

Services ("Immigration") and have learned the following:

      7.    On or about May 17, 2006, a confidential informant (the "CI") informed an undercover USSS agent ("Agent-1") with information about counterfeit handbags that were being sold from A&B Trading, Inc. ("A&B Trading") at 146 West 29th Street in New York City.  Later that day, the CI and an undercover Secret Service agent ("Agent-1") visited A&B Trading at 146 West 29th Street in New York City.  During this visit, Agent-1 arranged a purchase with two individuals, an African male who introduced himself as "Mohammed," later identified as MOHAMMED ADOYI and an Asian male who was later identified as GEN LNU.  Agent-1 asked to purchase six "Coach" handbags, twenty-four "Burberry" handbags, and six "Christian Dior" handbags.  GEN LNU told Agent-1 that the total price was $480 and told Agent-1 that he could pick up the handbags in an hour.

      8.    Agent-1 returned to A&B Trading approximately one hour later and MOHAMMED ADOYI provided Agent-1 with a black garbage bag filled with the handbags that he had ordered.

      9.    On or about June 7, 2006, Agent-1 returned to A&B Trading.  During this visit, Agent-1 arranged another purchase of counterfeit handbags with two individuals, MOHAMMED ADOYI, and an Asian female who was later identified as ANGELA HUNG.  During the course of this visit, Agent-1 placed an order with MOHAMMED ADOYI for 12 "Coach" handbags, 20 "Christian Dior" handbags, and 12

4

25

"Burberry" handbags for a total of $804. After accepting payment, MOHAMMED ADOYI then told Agent-1 to return in a half hour to pick up the handbags.

10. Approximately a half hour later, Agent-1 returned to A&B Trading and MOHAMMED ADOYI provided him with black trash bags filled with the handbags that Agent-1 had ordered. Both MOHAMMED ADOYI and ANGELA HUNG, who was also inside A&B Trading, instructed Agent-1 to go to the corner of 29th Street and 7th Avenue so that MOHAMMED ADOYI could provide Agent-1 with two more large bags filled with the remainder of the handbags that he had ordered. Agent-1 then left A&B Trading, went to his car, and drove to the corner of 29th Street and 7th Avenue.

11. When Agent-1 left A&B Trading, I, along with other USSS agents conducted visual surveillance of the area around A&B Trading. I observed MOHAMMED ADOYI enter a door to the building immediately to the left of A&B Trading, that was marked as the "India Building" and was also marked with the address of 146 West 29th Street. I then observed MOHAMMED ADOYI leaving the India Building five minutes later with two large black garbage bags and walking toward the corner of 29th Street and 7th Avenue.

12. I then followed MOHAMMED ADOYI and observed him meet, Agent-1 at the corner of 29th Street and 7th Avenue. I observed MOHAMMED ADOYI hand Agent-1 two large garbage bags filled with the counterfeit handbags that he had ordered.

13.  On or about July 24, 2006, Agent-1 returned to A&B Trading.  During this visit, Agent-1 arranged another purchase of counterfeit handbags with two individuals, MOHAMMED ADOYI, and GEN LNU.  During the course of this visit, Agent-1 placed an order with MOHAMMED ADOYI for 22 "Coach" handbags for a total of $374.  After accepting payment, MOHAMMED ADOYI then told Agent-1 to return in a half hour to pick up the handbags.

14.  Agent-1 returned to A&B Trading approximately a half hour later and engaged in a conversation with MOHAMMED ADOYI and GEN LNU.  During this conversation, MOHAMMED ADOYI provided Agent-1 with a large trash bag filled with the handbags that he had ordered.  Agent-1 then spoke to MOHAMMED ADOYI and GEN LNU arranged a large purchase of 900 counterfeit handbags for July 26, 2006.

15.  On July 26, 2006, Agent-1 returned to A&B Trading and arranged a purchase of approximately 1000 "Coach," "Burberry," and other brand name bags with MOHAMMED ADOYI. MOHAMMED ADOYI then instructed Agent-1 to return in an hour to complete the transaction.

16.  Approximately one hour later, Agent-1 returned to A&B Trading, and was informed that there two boxes of handbags at A&B Trading and the remainder of Agent-1's order of handbags was "next door."  At this time, MOHAMMED ADOYI was arrested at A&B Trading by USSS agents and read his Miranda rights.  MOHAMMED

6

ADOYI waived his Miranda rights and stated in sum, substance, and in part that there was a room on the second floor in the building next door where counterfeit bags and presses used to manufacture counterfeit bags were stored.

17.   MOHAMMED ADOYI then accompanied USSS agents to the building next door that was marked as the "146 India Building" at 146 West 29th Street, New York, New York (the "India Building"). He took the elevator up to the Second Floor of the India Building.  When he exited the elevator, he indicated that the first door on the left, directly across the hall from the stairwell, was the room where A&B Trading stored counterfeit handbags and presses used to manufacture counterfeit handbags.

18.   USSS agents also spoke to the owner of the India Building (the "Owner") who confirmed that the second floor room that MOHAMMED ADOYI had identified as storing counterfeit handbags and presses used to manufacture counterfeit handbags was currently being leased by A&B Trading.

CONCLUSION

19.   Based on the foregoing, I respectfully request that the Search Warrant sought in this affidavit issue pursuant to Rule 41 of the Federal Rules of Criminal Procedure, permitting authorized agents or officers to enter THE SECOND FLOOR ROOM

7

therein to search for and seize the items listed in Schedule A to

the Search Warrant.

_____
SARAH E. CANTWIL
Special Agent
United States Secret Service

Subscribed and sworn before me
this 26th day of July, 2006.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

## SCHEDULE A

The following items, which constitute evidence, instrumentalities, or fruits, of a scheme and conspiracy to traffic in counterfeit goods, in violation of Title 18, United States Code, Sections 371 and 2320 may be seized:

1. Counterfeit handbags, including but not limited to brands such as "Coach," "Burberry" and Christian Dior;

2. Presses used to manufacture counterfeit bags;

3. Stamps used to create counterfeit labels to be affixed in counterfeit handbags

4. Records and documents evidencing ownership, tenancy, and/or occupancy of THE SECOND FLOOR ROOM and also of A&G Trading, Inc.

5. Any cash, checks, money orders, or other negotiable financial instruments that may be proceeds of the fraud.

6. Any safety deposit boxes, safes, key-lock strong boxes, and other types of locked or closed containers that may contain any of the items listed in Schedule A, items 1-5.